# Illinois Official Reports

## Appellate Court

***Rodriguez v. Chicago Housing Authority*, 2015 IL App (1st) 142458**

| | |
|---|---|
| Appellate Court Caption | MARIBELY RODRIGUEZ, Petitioner-Appellant, v. CHICAGO HOUSING AUTHORITY, a Municipal Corporation, Respondent-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-2458 |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-4309; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Circuit court reversed; CHA decision confirmed in part, reversed in part and vacated in part; cause remanded to the CHA with directions. |
| Counsel on Appeal | Marc S. Lipinski, of Donnelly, Lipinski & Harris, LLC, of Chicago, for appellant.<br><br>Scott W. Ammarell, Clay S. Rehrig, and Karina Sanchez, law student, all of Chicago Housing Authority, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Hall and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    The petitioner, Maribely Rodriguez, appeals from an order of the circuit court denying her petition for *certiorari* and thereby confirming a decision of the respondent, Chicago Housing Authority (CHA), terminating her participation in the CHA's Housing Choice Voucher Program (Voucher Program). For the reasons that follow, we: reverse the judgment of the circuit court; confirm the decision of the CHA in part, reverse the decision of the CHA in part and vacate the decision of the CHA in part; and remand this matter back to the CHA for further proceedings.

¶ 2    The Voucher Program provides rental subsidies to eligible families. On July 24, 2012, the petitioner submitted an application to the CHA for continued eligibility in the Voucher Program. In that application, the petitioner reported her address as 3944 West Wrightwood Avenue, Apartment 2, Chicago, Illinois (hereinafter the "subsidized unit"). She listed herself as the head of the household and listed Carlos Rivera, her son, and Maribely Rivera, her daughter, as members of her household. On that same day, the CHA issued the petitioner a voucher for participation in the Voucher Program which contained the following provisions that are relevant to this appeal:

> "4. Obligations of the Family
>
>    A. When the family's unit is approved and the HAP contract is executed, the family must follow the rules listed below in order to continue participating in the housing choice voucher program.
>
>    B. The family must:
>
> * * *
>
>    10. Promptly notify the PHA [(public housing authority)] in writing if any family member no longer lives in the unit. ***
>
> * * *
>
>    14. Notify CHA of the arrest of a household member within 10 days of the occurrence for violent or criminal activity against persons or property, or involving alcohol, gangs, drugs and/or weapons."

¶ 3    On August 12, 2013, Carlos Rivera was arrested. On the following day, he was charged with murder.

¶ 4    On August 14, 2013, the petitioner executed an Out of Household Declaration, notifying the CHA for the first time that Carlos Rivera was no longer residing in the subsidized unit and that he had moved out in January 2013. The declaration was received by the CHA on August 15, 2013. On August 28, 2013, the CHA issued an amendment to the petitioner's Housing Assistance Payment (HAP) Contract, removing Carlos Rivera as a household member residing in the subsidized unit.

¶ 5    On August 29, 2013, the CHA issued an Intent To Terminate–Participant notice addressed to the petitioner informing her of the CHA's intent to terminate her participation in the Voucher Program by reason of her having "failed to notify CHA that household member Carlos Rivera, Jr. was arrested for violent criminal activity and failed to promptly notify CHA that Carlos Rivera, Jr. no longer resides in the assisted unit." On September 6, 2013, the petitioner executed a request for an informal hearing .

¶ 6     On December 19, 2013, the CHA issued an amended notice of its intent to terminate the petitioner as a participant in the Voucher Program (Amended Notice of Intent to Terminate) for the following reasons:

> "Did not notify CHA of the arrest of a household member within 10 days of the occurrence for violent or criminal activity against persons or property, or involving alcohol, gangs, drugs and/or weapons.
>
> On 8/14/13, household member Carlos Rivera was charged with murder. You failed to notify CHA of his arrest within 10 days.
>
> Additionally, on 8/15/13 you submitted an Out of Household Declaration stating that Carlos Rivera has not lived in the subsidized unit since January of 2013. You failed to promptly notify the CHA that Carlos Rivera no longer resides in the subsidized unit."

¶ 7     On January 13, 2014, an informal hearing was held before a CHA hearing officer on the Amended Notice of Intent to Terminate. In addition to documentary evidence establishing the facts set forth in the preceding paragraphs, the petitioner and one other witness testified. The petitioner testified that Carlos Rivera moved out of the subsidized unit at the end of January 2013 and moved into his father's home. He would visit on a weekly or biweekly basis, but had not been in the subsidized unit since May 30, 2013. According to the petitioner, she did not believe that her son's move in January 2013 was permanent as he was a minor and suffered from epilepsy. However, when her son turned 18 on April 20, 2013, she "knew he wasn't going to come back home." The petitioner also testified that she did not know that Carlos Rivera had been arrested when she executed her Out of Household Declaration on August 14, 2013. She stated that she did not learn of his arrest until August 16, 2013.

¶ 8     In addition to the petitioner, David Waller, the manager of the building in which the subsidized unit is located, testified. He stated that his duties include handling leasing for the building. According to Waller, he never experienced any problems with the petitioner as a tenant, and none of the other tenants in the building ever complained about her. He described the petitioner as a good tenant and stated that he wanted her to remain in her unit.

¶ 9     On February 19, 2014, the hearing officer issued an Informal Hearing Decision Letter (Decision), terminating the petitioner's participation in the Voucher Program. The hearing officer found that the CHA had established by a preponderance of the evidence that the petitioner violated her obligations as alleged in the Amended Notice of Intent to Terminate by: (1) failing to notify the CHA of Carlos Rivera's arrest within 10 days; and (2) by failing to promptly notify the CHA that Carlos Rivera was no longer a resident in the subsidized unit.

¶ 10    In support of the finding that the petitioner violated her obligations under her voucher by failing to notify the CHA of Carlos Rivera's arrest, the hearing officer held that Carlos Rivera remained a member of the petitioner's household until he was removed from the petitioner's voucher on August 15, 2013, and the fact that he moved out of the unit prior to that date is "irrelevant." Based upon the petitioner's testimony that Carlos Rivera moved out of the subsidized unit in January 2013 and that she knew as of April 20, 2013, that he would not be returning, the hearing officer concluded that the petitioner also violated the terms of her voucher by failing to notify the CHA by May 20, 2013, that Carlos Rivera no longer lived in the unit.

¶ 11 On March 12, 2014, the petitioner filed a timely petition for *certiorari* in the circuit court, seeking, in addition to other relief, an order reversing the CHA's decision to terminate her participation in the Voucher Program. On July 22, 2014, the circuit court entered an order denying the petition for *certiorari* which had the practical effect of confirming the CHA's decision to terminate the petitioner's entitlement to housing assistance under the Voucher Program. This appeal followed.

¶ 12 The CHA is a municipal corporation operating under the provisions of the Housing Authorities Act (310 ILCS 10/1 *et seq.* (West 2012)). The Housing Authorities Act does not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)) and provides no other method of judicial review of a final decision of the CHA. As a consequence, the proper vehicle to seek a judicial review of the CHA's final administrative decision in this case was by means of a common law writ of *certiorari*. See *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 333 (2009).

¶ 13 The circuit court possesses no greater authority to review the actions of an administrative agency by means of a writ of *certiorari* than it possesses when its review is governed by the Administrative Review Law. *Dubin v. Personnel Board*, 128 Ill. 2d 490, 498 (1989). The standards of review in either instance are essentially the same. *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). We, therefore, treat this appeal as any other appeal from a decision of the circuit court in an administrative review action, and review the decision of the administrative agency, not the decision of the circuit court. *Outcom*, 233 Ill. 2d at 337.

¶ 14 In urging reversal of the CHA's decision to terminate her entitlement to housing assistance under the Voucher Program, the petitioner argues, *inter alia*, that the finding that she violated her obligations as a participant in the Voucher Program by failing to notify the CHA that a member of her household had been arrested for murder is clearly erroneous. We agree.

¶ 15 When, as in this case, an administrative agency's finding involves an examination of the legal effect of a given set of facts, it presents a mixed question of fact and law. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). On review of such a finding, we apply the clearly erroneous standard. *Id.* An administrative agency's finding is clearly erroneous where, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made. *Outcom*, 233 Ill. 2d at 337.

¶ 16 As noted earlier, in the Decision the hearing officer found that the petitioner violated her obligations as a participant in the Voucher Program by both failing to promptly notify the CHA that Carlos Rivera ceased to reside in the subsidized unit and by failing to notify the CHA that he had been arrested for murder. We find that the two determinations are logically inconsistent.

¶ 17 Carlos Rivera was arrested on August 12, 2013, and charged with murder on the following day. It follows, therefore, that to trigger the petitioner's obligation to notify the CHA of the arrest, Carlos Rivera would had to have been a member of the petitioner's household on the date of his arrest. However, the hearing officer also found that the petitioner violated her obligations as a participant in the Voucher Program by failing to notify the CHA by May 20, 2013, at the latest, that Carlos Rivera no longer lived in the subsidized unit. Therein lies the seeming inconsistency. If Carlos Rivera ceased to be a resident in the subsidized unit on or before April 20, 2013, as the hearing officer evidently found, how then could he have been a member of the petitioner's household on August 12, 2013, the date of his arrest. The hearing officer resolved the dilemma by holding that Carlos Rivera remained a member of the petitioner's household until he was removed from the petitioner's voucher, without regard to

the date that he actually moved out. The hearing officer cited no authority for such a holding, the CHA has cited no authority supporting such a holding, and we have found none.

¶ 18 Neither the CHA's plan for the administration of the Voucher Program nor the regulations of the United States Department of Housing and Urban Development (HUD) with which the CHA's administrative plan must comply (see 24 C.F.R. § 982.54(b) (2012)) contain any provision supporting the hearing officer's holding that an individual remains a member of the household in a subsidized unit until that individual is removed from the participant's voucher. As the petitioner points out, for purposes of participation in the Voucher Program, the terms "family" and "household" are defined based on residence in the same subsidized unit. Section 5.403 of the Section 8 Tenant-Based Assistance: Housing Choice Voucher Program provides that a "family" is a single person or group of persons residing together. 24 C.F.R. § 5.403 (2012). "Household" is defined as "the family and PHA-approved live-in aide." 24 C.F.R. § 5.100 (2012). The CHA's own administrative plan for the Voucher Program states that an individual who is permanently absent from a subsidized unit is "no longer a family member." *Chicago Housing Authority Housing Choice Voucher Program Administrative Plan* § 3-I.L. (eff. Dec. 1, 2012). The instruction booklet for completion of HUD form HUD-50058 which the CHA must complete for households participating in the Voucher Program (see 24 C.F.R. §§ 908.101, 908.104 (2012)) provides that "[t]he household includes everyone who lives in the unit." Further, the common understanding of the term "household" is a group of individuals who dwell under the same roof and compose a family. Webster's Third New International Dictionary 1096 (1981). These references lead us to conclude that an individual ceases to be a member of the household of a Voucher Program participant when that individual ceases to reside in the subsidized unit without expectation of return.

¶ 19 According to the petitioner's testimony, Carlos Rivera moved out of the subsidized unit in late January 2013 and went to live with his father, and that after his eighteenth birthday on April 20, 2013, she "knew he wasn't going to come back home." There is no evidence in the record that Carlos Rivera ever resided in the subsidized unit after April 20, 2013. In point of fact, there is no evidence in the record that he resided in the unit after late January 2013 when, according to the petitioner, he moved out. The evidence of record admits of but a single conclusion; namely, that Carlos Rivera was not a member of the petitioner's household on the date he was arrested. As a consequence, the petitioner was under no obligation to notify the CHA of his arrest, and the hearing officer's finding to the contrary is clearly erroneous.

¶ 20 We turn next to the finding that the petitioner violated her obligations as a participant in the Voucher Program by failing to promptly notify the CHA that Carlos Rivera no longer lived in the subsidized unit. The CHA's administrative plan governing the Voucher Program provides that, when a participant's family obligations require that the CHA be notified of a change, notification to the CHA within 30 calendar days is considered prompt notice. *Chicago Housing Authority Housing Choice Voucher Program Administrative Plan* § 5-I.C. (eff. Dec. 1, 2012). As noted earlier, the petitioner testified that Carlos Rivera ceased to reside in her subsidized unit in late January 2013 and that she knew as of April 20, 2013 that her son would not be returning to the unit. Consequently, as the hearing officer found, the petitioner was required to notify the CHA by May 20, 2013, at the latest, that Carlos Rivera no longer lived in the unit. The petitioner argues that, by amending her HAP Contract on August 28, 2013, and removing Carlos Rivera as a household member residing in the subsidized unit, the CHA somehow

waived the right to assert a violation of the petitioner's obligation to promptly notify it that he was no longer residing in the unit. We find no merit in the argument.

¶ 21 Nothing in the record supports the proposition that, when the CHA received the petitioner's Out of Household Declaration on August 15, 2013, notifying it that Carlos Rivera had moved out of the subsidized unit in January 2013, it was possessed of any information as to the date when his absence became permanent. The CHA's administrative plan governing the Voucher Program provides that "[g]enerally an individual who is or is expected to be absent from the assisted unit for more than 180 consecutive days is considered to be permanently absent and no longer a family member." *Chicago Housing Authority Housing Choice Voucher Program Administrative Plan* § 3-I.L. (eff. Dec. 1, 2012). If Carlos Rivera ceased to reside in the subsidized unit in late January, as the petitioner testified, her notification to the CHA on August 15, 2013, may well have been within the 30 day period after he was considered to be permanently absent and no longer a family member. It was not until the petitioner testified at the informal hearing that it was revealed that Carlos Rivera went to live at his father's home and that the petitioner knew as of April 20, 2013, that he would not be returning to the unit. Under these circumstances, we find no waiver of the petitioner's obligation to notify the CHA within 30 days of the date that she knew that Carlos Rivera had permanently moved out of the subsidized unit.

¶ 22 Based upon the petitioner's own testimony as to the date upon which she knew that Carlos Rivera would not be returning to reside in the subsidized unit and the fact that she never notified the CHA that he had moved until 3½ months thereafter, we conclude that the hearing officer's determination that the petitioner violated her obligations as a participant in the Voucher Program by failing to promptly notify the CHA that a member of her household had ceased to reside in the unit is neither clearly erroneous nor against the manifest weight of the evidence.

¶ 23 The CHA's termination of the petitioner as a participant in the Voucher Program was based upon the hearing officer's determination that CHA sustained its burden of proving both of the violations asserted against her. However, we have concluded that the hearing officer's determination as to one of those violations is clearly erroneous. We believe it appropriate, therefore, to vacate that portion of the Decision terminating the petitioner's participation in the Voucher Program and to remand this matter back to the CHA for a hearing only as to the appropriate sanction for the petitioner having failed to promptly notify the CHA that Carlos Rivera ceased to reside in the subsidized unit, taking into consideration all of the factors enumerated in section 12-II.D. of the CHA's administrative plan for the Voucher Program. See *Chicago Housing Authority Housing Choice Voucher Program Administrative Plan* § 12-II.D. (eff. Dec. 1, 2012).

¶ 24 For the foregoing reasons, we: reverse the judgment of the circuit court; confirm that part of the Decision finding that the petitioner violated her obligations as a participant in the Voucher Program by failing to promptly notify the CHA that Carlos Rivera no longer lived in the subsidized unit; reverse that part of the Decision finding that the petitioner violated her obligations as a participant in the Voucher Program by failing to notify the CHA that Carlos Rivera had been arrested; vacate the termination of the petitioner as a participant in the Voucher Program; and, remand this matter back to the CHA for further proceedings consistent with this opinion.

¶ 25     Circuit court reversed; CHA decision confirmed in part, reversed in part and vacated in part; cause remanded to the CHA with directions.