# Illinois Official Reports

## Appellate Court

***Lipscomb v. Housing Authority*, 2015 IL App (1st) 142793**

| | |
|---|---|
| Appellate Court Caption | BRENDA LIPSCOMB, Petitioner-Appellee, v. THE HOUSING AUTHORITY OF THE COUNTY OF COOK, Respondent-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-2793 |
| Filed | December 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-23072; the Hon. Jean Prendergast Rooney, Judge, presiding. |
| Judgment | Circuit court affirmed in part and reversed in part; hearing officer's decision reversed in part; cause remanded with directions. |
| Counsel on Appeal | Judge, James & Kujawa, LLC, of Park Ridge (Michael E. Kujawa, Shirley-Zaneta Blazejczyk, and Deborah A. Ostvig, of counsel), for appellant.<br><br>Elizabeth Hess, Leslie Garthwaite, and Peter Bartoszek, all of Kirkland & Ellis LLP, and Patricia Nelson, of Chicago Volunteer Legal Services, both of Chicago, for appellee. |

Panel                        JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1       Respondent Housing Authority of the County of Cook (HACC) sent a notice of termination of housing choice voucher (HCV) benefits to petitioner Brenda Lipscomb based on Brenda's alleged failure to timely report changes in family composition and income to the HACC. Brenda requested an informal hearing on her termination of benefits, and the hearing officer affirmed the termination of her benefits. Brenda filed a petition for *certiorari* requesting that the circuit court of Cook County review the hearing officer's approval of the termination of her HCV benefits, and the circuit court judge determined that the hearing officer's decision was clearly erroneous and reversed its decision. The HACC now appeals this ruling arguing that termination of Brenda's HCV benefits was appropriate.

¶ 2                                 BACKGROUND

¶ 3      On March 4, 2013, respondent HACC sent a notice of termination of HCV benefits to petitioner Brenda Lipscomb. The letter indicated that Brenda's HCV benefits were being terminated because she had violated the following tenant obligations: "The family must report in writing within 30 days when there is an increase in household income or new income for any family member; Any information that the family supplies must be complete and accurate; The family must supply any information requested by the HACC and [Housing and Urban Development (HUD)] for use in a regularly scheduled reexamination or interim reexamination of family income and composition." The next paragraph in the letter then states: "You failed to report Brelena Edmonson's employment at: American Multi Cinema, Inc., which began 3/25/2012. By all supporting documentation, Brelena was still living in your unit. This unreported income totals $6,518.66."

¶ 4      On May 28, 2013, the HACC wrote to Brenda formally recognizing Brenda's request for an informal hearing. In the letter, the HACC initially stated: "The notice of termination was sent on March 4, 2013 because you failed to report your true household members and/or you failed to report true and complete income in the period March 2012 through November 2012." The HACC then offered to resolve the matter with Brenda, and avoid an informal hearing, if Brenda could pay back the amount of money that the HACC had allegedly overpaid her, $1,859, by paying $185.90 on June 14, 2013 and $69.71 each month for 24 months thereafter. On June 5, 2013, Brenda responded in writing to the HACC that she could not make those payments due to her income.

¶ 5      On August 15, 2013, Brenda appeared before the hearing officer for her informal hearing. There is no transcript of this hearing in the record, and the hearing officer's "Order and Decision" indicates that he heard testimony from Brenda Lipscomb and Anne Richmond. The documents that were presented as evidence on behalf of the HACC and Brenda are within the record, along with the hearing officer's "Order and Decision." Of relevance to this appeal, the following documents were submitted at the informal hearing:

-November 7, 2011 Certification of Zero Income filled out and signed by Brelena, which claimed that Brelena was not employed, made no income, and was dependent solely on her mother.

-November 7, 2011 Tenant Obligations Under the HCV Program signed by Brenda acknowledging that the family must report in writing within 30 days any household members whom are no longer living in the unit, and that the family must report in writing within 30 days when there is an increase in household income or new income for any family member.

-November 30, 2011 Renewal Recertification Application filled out by Brenda, advising the HACC that Brelena was not employed and not earning money and that there were six people living in the household, including Brelena and Darrell, her daughter and son. This Renewal Recertification Application is signed by Brenda, Brelena, and Darrell.

-February 6, 2012 Notarized Housing Authority of the County of Cook form filled out and signed by Brenda indicating that Darrell had moved out of the household as of August 1, 2011. Attached to this form is a copy of Darrell's signed lease dated August 1, 2011.

-November 13, 2012 Renewal Recertification Application filled out by Brenda. This renewal form no longer listed Brelena as a member of the household and further did not indicate that Brelena had been employed since March 2012.

-November 13, 2012 Tenant Obligations Under the HCV Program signed by Brenda acknowledging that the family must report in writing within 30 days any household members whom are no longer living in the unit, and that the family must report in writing within 30 days when there is an increase in household income or new income for any family member.

-January 22, 2013 Notarized Housing Authority of the County of Cook form filled out and signed by Brenda indicating that Brelena had moved out of the household as of February 26, 2012. Attached to this form is a copy of Brelena's Illinois identification card issued on December 20, 2012 indicating her new address in Markham, Illinois.

-February 13, 2013 Letter from Equifax verifying that Brelena became employed by American Multi Cinema, Inc., on March 25, 2012, earning $6,518.66 in 2012 and $1,718.07 in the first two months of 2013.

-March 4, 2013 Termination of benefits letter indicating that Brenda's HCV benefits were being terminated because she had violated the following tenant obligations: "The family must report in writing within 30 days when there is an increase in household income or new income for any family member; Any information that the family supplies must be complete and accurate; The family must supply any information requested by the HACC and HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition."

-May 28, 2013 Letter from the Housing Authority of Cook County acknowledging Brenda's request for an informal hearing and giving Brenda the option to avoid an informal hearing by paying off the amount that the HACC had

allegedly overpaid, $1,859, with a 10% down payment plus 24 monthly installments thereafter.

-June 5, 2013 Letter from Brenda to the HACC indicating that she is unable to pay the amount requested because of her income.

¶ 6 Based on the documents and evidence presented at the informal hearing, the hearing officer found that the HACC had proven its case by a preponderance of the evidence, finding in favor of the HACC and against Brenda and affirming the decision of the HACC to terminate Brenda's benefits under the HCV program "due to her failure to notify the Housing Authority within 30 days of changes in her family composition and family income[ ]. Under these circumstances, the Housing Authority was within its authority to terminate Ms. Lipscomb from the Housing Choice Voucher program." In coming to this conclusion, the hearing officer indicated that:

"The documentary evidence reflects that at the time Brelena began working at American Multi-Cinema, she was no longer living with her mother Brenda Lipscomb at the subject subsidized apartment unit. However, the fact that Brelena had moved out of the subsidized unit as of February 26, 2012 was not reported to the Housing Authority until 9 months later, on November 20, 2012, when Ms. Lipscomb submitted her recertification application dated November 13, 2012, in which Brelena Edmondson [*sic*] name was not included in the list of household members. On January 28, 2013, Ms. Lipscomb submitted a sworn statement that Brelena Edmonson had moved from the subject property on February 26, 2012."

As a result, the hearing officer found that Brenda did not follow the HCV program rules by reporting a change in family circumstances within 30 days, which resulted in an overpayment by the HACC of $1,859. The hearing officer further found that:

"Ms. Lipscomb stated falsely in her recertification application that was submitted on January 4, 2012 that her son Darrell Edmonson lived with her in the subsidized unit as of November 30, 2011. This statement was false at the time it was made, as Brenda Lipscomb reported on February 6, 2012 that Darrell Edmonson had moved out of the subsidized apartment unit on August 1, 2011."

The hearing officer noted that his "decision to affirm the HACC's staff decision to terminate Ms. Lipscomb's Housing Choice Voucher did not turn on credibility determinations involving Ms. Lipscomb. Ms. Lipscomb did not dispute that she had failed to timely report that Brelena Edmonson and Darrell Edmonson had moved from the subsidized apartment unit and she did not dispute that Brelena Edmonson had received income that was not reported to the Housing Authority." The hearing officer also including the following statement in his "Order and Decision": "No information was submitted in mitigation that Ms. Lipscomb or any of her family were disabled, had any medical conditions, or were military veterans or victims of domestic violence."

¶ 7 On October 10, 2013, Brenda filed a petition for *certiorari* requesting that the circuit court of Cook County review the hearing officer's "Order and Decision." On August 18, 2014, the circuit court judge determined that the hearing officer's decision was clearly erroneous and reversed its decision to terminate Brenda's HCV benefits. The circuit court found that the "HACC's Order and Decision fails to make any meaningful reference to the HACC's Admin Plan or the HUD Housing Choice Voucher Handbook" and further "fails to

consider mitigating circumstances listed in HACC's Admin Plan." The circuit court went on to state that:

> "[T]here is no indication that the hearing officer ever considered Ms. Lipscomb's intent–whether failure to disclose changes in the household was an unintentional error or omission or whether it was intentional fraud. A review of the record demonstrates that Ms. Lipscomb demonstrates that she did not intend to commit fraud and that she attempted to submit accurate information."

Last, the circuit court's order indicates that: "It is this absolute failure to consider Ms. Lipscomb's mitigating circumstances, in violation of HACC's own rules, which requires reversal of the decision as opposed to a remand for further proceedings."

¶ 8    The HACC timely filed a notice of appeal on September 11, 2014, challenging the circuit court's August 18, 2014 order that reversed the HACC's decision to terminate Brenda's HCV benefits. On appeal, the HACC argues that the circuit court erred in reversing the hearing officer's ruling upholding the termination of Brenda's HCV benefits because, in reviewing the hearing officer's decision, it incorrectly applied the clearly erroneous standard when it should have applied the manifest weight of the evidence standard. Regardless of the standard applied, the HACC argues that the hearing officer's decision to uphold the termination of Brenda's benefits was neither clearly erroneous nor against the manifest weight of the evidence where there was no dispute that Brenda failed to report within 30 days when Brelena and Darrell moved out of the household and failed to report Brelena's income as of March 25, 2012. Further, the HACC argues that the hearing officer did consider mitigating factors prior to terminating Brenda's HCV benefits and, even if this court were to find that he did not consider such mitigating factors, the proper remedy would be to remand the matter for further evaluation.

¶ 9    Brenda argues the circuit court was correct and the termination of her HCV benefits was improper where: (1) the hearing officer did not consider mitigating factors that he is required to consider when using discretion to terminate HCV benefits, specifically the fact that there were minor children living in the household at the time the termination was made; (2) the hearing officer failed to consider Brenda's intent when she failed to make reports about changes in her family composition to the HACC within 30 days; (3) the hearing officer's finding that petitioner failed to timely report the income of her daughter is clearly erroneous where the record shows her daughter was no longer living in the household when she began earning income; (4) Brenda's failure to report information within 30 days may not have resulted in a benefit to her; and (5) termination of benefits was arbitrary and unreasonable given the HACC's failure to consider the mitigating factors present in the case. For the reasons below, we: (1) reverse the hearing officer's finding that Brenda failed to timely report an increase in household income where Brelena had already moved out of the household by the time she began receiving an income and affirm the circuit court's order with respect to its finding relating to Brenda's failure to report Brelena's income as being clearly erroneous; and (2) remand this matter to the hearing officer for further consideration of whether termination of Brenda's benefits based on the supportive findings that Brenda failed to timely report when her son and daughter moved out of the household is appropriate under the facts of this case.

¶ 11    After a trial court ruling on a writ of *certiorari* seeking review of an administrative decision, we "treat th[e] appeal as we would any other appeal for administrative review." *Landers v. Chicago Housing Authority*, 404 Ill. App. 3d 568, 571 (2010). In administrative review cases, this court reviews the decision of the administrative agency, not the decision of the circuit court. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 162 (2006). When a court reviews the decision of an administrative agency, the court must review only " 'the record of the administrative proceedings.' " *Gaston v. CHAC, Inc.*, 375 Ill. App. 3d 16, 25 (2007) (quoting *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 847 (1996)).

¶ 12                                 Standard of Review

¶ 13    In this case, the HACC argues that the appropriate standard by which the circuit court should have reviewed the hearing officer's decision is the manifest weight of the evidence standard because there was "no question of fact whether Lipscomb violated the tenant obligations when she admittedly did not report her changes in household and did not report her daughter's income–she did."[1] Brenda argues that the appropriate standard of review is *de novo* because the issue raised by Brenda was whether "the HACC had complied with its obligations in evaluating Ms. Lipscomb's actions based on the undisputed facts." Brenda further argues that the HACC's argument that the manifest weight of the evidence standard applies is illogical where it admits there are no disputed issues of facts in the case.

¶ 14    "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Purely factual findings are reviewed under a "manifest weight of the evidence" standard, under which the agency's findings are considered "*prima facie* true and correct" unless "the opposite conclusion is clearly evident." (Internal quotation marks omitted.) *Gaston*, 375 Ill. App. 3d at 22-23. On the other hand, if a purely legal question is at issue, then the standard of review is *de novo*; this standard is "independent and not deferential." (Internal quotation marks omitted.) *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011).

¶ 15    Where an agency's decision involves a mixed question of law and fact, we will not reverse the agency's decision unless it is "clearly erroneous," which occurs only "when the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). Our supreme court has explained: "Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the

---

[1]Ironically, despite this assertion that circuit court should have reviewed the hearing officer's decision under a manifest weight of the evidence standard, the HACC recognizes that "[t]he differences which once existed between the statutory and common law methods of reviewing administrative agencies 'have all but been lost, and now the extent of the judicial review is virtually the same under both methods' " and, further states on page six of its brief that in reviewing the hearing officer's decision, our review is *de novo*.

statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Id.* Thus, "an examination of the legal effect of a given state of facts involves a mixed question of fact and law" subject to the "clearly erroneous" standard of review. *Id.* (citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998)).

¶ 16 Here, the issues presented before this court are: (1) whether the hearing officer was required to consider mitigating factors and Brenda's intent prior to terminating her benefits; (2) if so, whether the hearing officer did in fact consider mitigating factors and Brenda's intent prior to terminating her HCV benefits; and (3) whether the evidence supports the finding that Brenda failed to disclose an increase in household income. We find that the first issue is a purely legal question, requiring a *de novo* standard of review (*Goodman*, 241 Ill. 2d at 406), whereas the second and third issues involve examination of the legal effect of a given set of facts thus requiring the "clearly erroneous" standard of review (*Cinkus*, 228 Ill. 2d at 211). As such, the manifest weight of the evidence standard was not appropriate here, and, consistent with our above findings, we apply the *de novo* and clearly erroneous standards of review below.

¶ 17 The Hearing Officer's Order and Decision

¶ 18 We first address the fact that in this case, the hearing officer upheld the termination of Brenda's HCV benefits based in part on its finding that "[t]he Housing Authority has shown by a preponderance of the evidence that Ms. Lipscomb failed to report changes in family composition *and* family income within 30 days." (Emphasis added.) However, based on the record, these two findings are logically inconsistent. The record indicates that Brenda's daughter, Brelena, moved out of the household on February 26, 2012. The record also indicates that Brelena began her employment at American Multi Cinema, Inc., on March 25, 2012, almost a month after she moved out. Therefore, because Brelena was no longer living in the household as of March 25, 2012 when she began receiving an income, Brenda was under no obligation to report Brelena's income from American Multi Cinema, Inc. *Rodriguez v. Chicago Housing Authority*, 2015 IL App (1st) 142458, ¶ 18 ("an individual ceases to be a member of the household of a Voucher Program participant when that individual ceases to reside in the subsidized unit without expectation of return"). While the hearing officer acknowledged that Brelena had moved out of the household prior to earning income, which in effect relieved Brenda of her duty to report that information to the HACC, the hearing officer still found that the HACC had proven both violations by a preponderance of the evidence. Based on the record before us, the only possible alleged violation that the HACC could pursue as a basis for terminating Brenda's HCV benefits was her failure to timely report when her son and daughter moved out of the household. An administrative agency's finding is clearly erroneous where, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made. See *id.* ¶ 23 (remanding to Chicago Housing Authority (CHA) where the CHA upheld a termination of HCV benefits based on the petitioner's failure to report that her son had moved out of the household and failure to report that the son had been charged with murder, where the murder had occurred after the son had moved out of the household). In this case, we find the hearing officer's finding that Brenda failed to report an increase in household income was clearly erroneous and we reverse this finding. In fact, we would reverse the hearing officer's finding that

Brenda failed to report an increase in household income even if we employed the manifest weight of the evidence standard as suggested by the HACC because that finding is contrary to the manifest weight of the evidence for the reasons set forth above. Accordingly, we reverse the hearing officer's finding that Brenda failed to timely report her daughter's income since the record reflects, and it is uncontested, that Brelena moved out of the household before she began receiving an income.

¶ 19 We note that this failure to report an increase in household income appeared to be the HACC's primary reason for terminating Brenda's HCV benefits in the first place. In its March 4, 2013 letter, the HACC indicated that Brenda's HCV benefits were being terminated because she had violated the following tenant obligations: "The family must report in writing within 30 days when there is an increase in household income or new income for any family member; Any information that the family supplies must be complete and accurate; The family must supply any information requested by the HACC and HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition." The next paragraph in the letter states: "You failed to report Brelena Edmonson's employment at: American Multi Cinema, Inc., which began 3/25/2012. By all supporting documentation, Brelena was still living in your unit. This unreported income totals $6,518.66." These facts were also repeated in the hearing officer's decision as evidence that was submitted at the informal hearing, and the hearing officer ultimately upheld the termination of Brenda's benefits based in part on her failure to "report changes in family composition and income within 30 days." Thus, while failing to timely report that Brelena had moved out of the household *could* fall under the tenant obligations listed in the March 4, 2013 letter, it is apparent that the HACC's primary reason for terminating Brenda's HCV benefits was Brenda's failure to report Brelena's income.

¶ 20 Notwithstanding the above, the record shows that Brenda failed to timely report when her son and daughter moved out of the household. The record indicates that on February 6, 2012, Brenda submitted to the HACC a "Notarized Housing Authority of the County of Cook" form filled out and signed by Brenda indicating that Darrell had moved out of the household as of August 1, 2011. Attached to this form is a copy of Darrell's signed lease dated August 1, 2011. The record further indicates that on January 22, 2013 Brenda submitted to the HACC another "Notarized Housing Authority of the County of Cook" form filled out and signed by Brenda indicating that Brelena had moved out of the household as of February 26, 2012. Attached to this form is a copy of Brelena's Illinois identification card issued on December 20, 2012 indicating her new address in Markham, Illinois. These admissions obviate the fact that Brenda failed to timely report when her son and daughter had moved out of the household. Because these failures may form the basis for discretionary termination of HCV benefits (see 24 C.F.R. § 982.552(c) (2012)), we now address the parties' arguments relating to mitigation and intent in the context of these failures below.

¶ 21 The Code of Federal Regulations (Code) requires that the HACC "adopt policies prescribing when and under what conditions the family must report a change in family income or composition." 24 C.F.R. § 982.516(c) (2012). "The family must promptly notify the [Public Housing Agency (PHA)] if any family member no longer resides in the unit." 24 C.F.R. § 982.551(h)(3) (2012). "Any information supplied by the family must be true and complete." 24 C.F.R. § 982.551(b)(4) (2012).

¶ 22    According to the HACC's HCV program, created pursuant to section 982.516(c) of the Code, the family must report in writing within 30 days any household members who are no longer living in the subsidized unit and must report in writing when there is an increase in household income or new income for a family member. See HACC Tenant Obligations Under the HCV Program (1)(b) & (1)(c) ("b. The family must report in writing within 30 days any household members whom are no longer living in the unit. c. The family must report in writing within 30 days when there is an increase in household income or new income for any family member."); see also HACC, Housing Choice Voucher Program Administrative Plan 209 (2012) ("If a household member ceases to reside in the unit, the family must inform the HACC within 15 business days.").

¶ 23    Section 982.552 of the Code governs termination from the voucher program. Section 982.552(b) lists the reasons for which the agency is required and "must" terminate families from the program, while subsection (c) lists the reasons for which the agency has the authority to or "may" terminate families from the program. 24 C.F.R. § 982.552(b), (c) (2012). This distinction–that subsection (b) describes "mandatory" grounds for termination by the agency whereas subsection (c) lists "discretionary" grounds for termination–is apparent from the language of the Code and has previously been recognized by this court. See *Gaston*, 375 Ill. App. 3d 16. One of the discretionary grounds for termination listed in subsection (c) is: "If the family violates any family obligations under the program (see 982.551)." 24 C.F.R. § 982.552(c)(1)(i) (2012).

¶ 24    Section 982.552(c) of the Code also lists "relevant circumstances" for the agency to consider before terminating voucher benefits in a discretionary case, and states:

        "(2) Consideration of circumstances. In determining whether to deny or terminate assistance because of action or failure to act by members of the family:

        (i) The PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i) (2012).

¶ 25    We have held that a discretionary termination of benefits under subsection (c) requires the agency to consider these "relevant circumstances" before making its determination. (Internal quotation marks omitted.) *Gaston*, 375 Ill. App. 3d at 24. *Gaston* concerned discretionary terminations premised on two families' alleged failure to report income to the CHA in violation of their " 'family obligations.' " *Id*. The hearing officer upheld the terminations "without consideration of any 'circumstances' relevant to their particular cases" and "did not offer any reasons for why she chose to exercise her discretion to terminate in these particular cases." *Id*. Further, the *Gaston* court stated that "[t]he decisions [of the hearing officers] simply summarized the testimony presented at the hearing, without making credibility determinations or other factual findings. The decisions then stated that the plaintiff had presented 'no credible evidence' that she was 'not in violation of her family obligations.' " *Id*. at 23-24. Accordingly, this court held in *Gaston* that "[w]hile [s]ubsection (c) does not limit the agency to consideration of the listed 'circumstances,' the agency must consider some circumstances particular to the individual case, otherwise section 982.552's distinction between mandatory and discretionary terminations becomes meaningless." *Id*. at 24. A section must be construed " 'as a whole, so that no part is rendered meaningless or

superfluous.' " *Id*. (quoting *People v. Jones*, 223 Ill. 2d 569, 581 (2006)). As such, the *Gaston* court found that the hearing officer had failed to consider any relevant circumstances in exercising its discretion and reversed the hearing officer's decision to terminate assistance. *Id*.

¶ 26 Further, and in conjunction with and pursuant to the Code, the HACC's policies are also relevant and in line with *Gaston*. The Code requires each PHA to "adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements" and to "state[ ] PHA policy on matters for which the PHA has discretion to establish local policies." 24 C.F.R. § 982.54(a) (2012). The administrative plan "must be in accordance with HUD regulations and requirements" and "[t]he PHA must administer the program in accordance with the PHA administrative plan." 24 C.F.R. § 982.54(b)-(c) (2012). Accordingly, pursuant to section 982.552(c)(2)(i) of the Code, the HACC 2012 HCV Administrative Plan states in chapter 12, titled "TERMINATION OF ASSISTANCE AND TENANCY," under section 12-II.D titled "CRITERIA FOR DECIDING TO TERMINATE ASSISTANCE," that:

"The HACC will consider the following factors when making its decision to terminate assistance:

• The seriousness of the case, especially with respect to how it would affect other residents

• The effects that termination of assistance may have on other members of the family who were not involved in the action or failure

• The extent of participation or culpability of individual family members, including whether the culpable family member is a minor or a person with disabilities or (as discussed further in section 12-II.E) a victim of domestic violence, dating violence, or stalking

• The length of time since the violation occurred, the family's recent history and the likelihood of favorable conduct in the future

\* \* \*

• In the case of program abuse, the dollar amount of the overpaid assistance and whether or not a false certification was signed by the family." HACC, Housing Choice Voucher Program Administrative Plan 222 (2012).

¶ 27 While there is no question that Brenda failed to timely report when her son and daughter moved out of the household, based on the record before us, we cannot say whether the hearing officer considered mitigating factors or Brenda's intent when it decided to terminate Brenda's HCV benefits in accordance with the statutes, regulations and case law discussed above. Moreover, one of the reasons termination of benefits was recommended in the first place was because of the finding that Brenda failed to report an increase in household income, a finding that we just found to be unsupported by the record.

¶ 28 With respect to mitigating factors, just as we held in *Gaston*, "the agency must consider some circumstances particular to the individual case" in a termination under subsection (c) because "otherwise section 982.552's distinction between mandatory and discretionary terminations becomes meaningless." *Gaston*, 375 Ill. App. 3d at 24. Although the hearing officer including the following statement in his "Order and Decision," "[n]o information was submitted in mitigation that Ms. Lipscomb or members of her family were disabled, had any

- 10 -

medical conditions, or were military veterans or victims of domestic violence[,]" this statement is problematic where the record clearly indicates the presence of at least one mitigating factor–that there were minor children in the household at the time benefits were terminated. There is absolutely nothing in the record indicating that this factor was considered by the hearing officer despite the fact that it appears within the documents that were submitted as evidence before the hearing officer. *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101, 103 (1975) ("an administrative agency [decision] must contain findings to make possible a judicial review of the agency's decision"); *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 351 Ill. App. 3d 1109, 1116 (2004), *aff'd*, 216 Ill. 2d 455 (2005) (where certain findings are lacking, the "cause must be remanded for further proceedings and allow the administrative body to enter its findings"). As such, we remand for consideration of mitigating factors relevant to this case with respect to Brenda's failure to timely report when her son and daughter moved out of the household.

¶ 29 Although we have already found that remand is required based on mitigating factors, we nonetheless briefly address the issue of intent for consideration on remand. With respect to intent, the HACC concedes that the hearing officer did not make a finding of fact that Brenda intended to commit a fraud when she failed to report certain information to the HACC. Instead, the HACC argues that "Lipscomb's intent to deceive was inferred by the Hearing Officer from evidence that Lipscomb knowingly made several statements to the HACC for the purpose of inducing the HACC to retain her voucher benefit at its current dollar amount." The HACC then cites to *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 135 (2003), for the proposition that "[t]he intent to deceive can be inferred from the fact that a person knowingly makes a false statement when made for the purpose of inducing the one to whom the statement is made to act." However, whether Brenda made false statements to the HACC for the purpose of receiving higher benefits is not apparent from the record, and there is no indication as to whether the hearing officer heard such evidence. Instead, the record shows that Brenda failed to report within 30 days when her two children moved out of the household, but that she ultimately did report this information on her own. The record further shows that Brenda failed to report her daughter's income, but that her daughter had already moved out of the household at the time she began receiving an income. Not only does the hearing officer not indicate that he inferred an intent to fraud from these facts (in fact, the word "intent" and "fraud" are absent from the hearing officer's "Order and Decision"), but we are not in a position to make such a finding based upon those facts.

¶ 30 The HACC argues that a court may infer intent to defraud based on a failure to report certain information. However, the hearing officer made no such finding here. Rather, the hearing officer concluded:

> "The Housing Authority has shown by a preponderance of the evidence that Ms. Lipscomb failed to report changes in family composition and family income within 30 days and that Ms. Lipscomb submitted information to the Housing Authority that was not accurate and complete, all in violation of Ms. Lipscomb's obligations under the Housing Choice Voucher program. Under these circumstances, the Housing Authority was within its authority to terminate Ms. Lipscomb from the Housing Choice Voucher program."

Further, chapter 14 of the HACC 2012 HCV Administrative Plan provides that there is a distinction between "an unintentional error or omission" and "[p]rogram abuse or fraud." (Emphasis omitted.) HACC, Housing Choice Voucher Program Administrative Plan 247 (2012). The latter is "a single act or pattern of actions that constitute a false statement, omission, or concealment of a substantial fact, made with the intent to deceive or mislead." *Id*.

¶ 31    In sum, because the hearing officer made no findings of fact with respect to mitigating factors or intent where termination of HCV benefits in this case could only be based upon Brenda's failure to timely report when her son and daughter moved out of the household, we remand the matter for further findings of facts. The above discussion of mitigating factors and intent is provided only to assist the hearing officer on remand when considering these factors in light of Brenda's failure to timely report when her son and daughter had moved out of the household.

¶ 32    Last, in response to Brenda's alternative argument that the hearing officer's ruling was improper because it was an unreasonable sanction, the HACC argues in its reply brief that termination was its only option given that Brenda did not enter into a repayment agreement. First, this argument was not made in the HACC's appellant brief and is therefore waived for that reason. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Second, there is nothing in the record to show this argument–that termination was the only option for the HACC in this case–was ever made in the lower court. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal."). In fact, in the HACC's "Response in Opposition to Petitioner's Brief in Support of Her Petition for Certiorari," the HACC concedes that "penalties for program abuse caused by a participant family are punishable"[2] by requiring the family to repay the excess subsidy amounts, terminating the family's assistance, or referring the family for state or federal prosecution.[3] As such, this argument is not properly before this court.

¶ 33    For purposes of the remand, we note that the HACC's May 28, 2013 letter, wherein it alleged that Brenda's failures resulted in an overpayment in housing benefits of $1,859 to Brenda, it appears, but we cannot say with certainty, that this number was calculated based upon the alleged unreported income of Brelena, an alleged violation that is unsupported by the evidence and cannot stand. If the calculation was based on Brelena's income, it would certainly be inaccurate. Additionally, if the HACC had terminated Brenda's benefits solely based upon her failure to timely report when her son and daughter had moved out, it is possible that no overpayment, or a lesser overpayment, occurred and further possible that the

---

[2]As discussed above, whether this was an "abuse" of the voucher program in part depends on Brenda's intent in her failure to report certain information and whether she intended to deceive the HACC in order to receive higher HCV benefits. In HACC's "Response in Opposition to Petitioner's Brief in Support of Her Petition for Certiorari," the HACC repeatedly states that Brenda "intentionally" misrepresented information before the HACC, yet on appeal the HACC concedes that any "intent" it alleges was inferred from the facts of the case.

[3]The fact that this argument was not raised in the lower court or in appellant's brief is obviated by the fact that the HACC had to attach the documents that support this argument to its reply brief.

hearing officer would have reversed the HACC's termination of Brenda's HCV benefits. As such, we must remand this matter to the HACC for consideration of termination, mitigating factors and intent based solely on Brenda's alleged failure to timely report when her son and daughter moved out of the household. See *Rodriguez*, 2015 IL App (1st) 142458, ¶ 23. On remand, the hearing officer will also have to determine what, if any, overpayments were made to Brenda as a result of her failure to timely report when her son and daughter moved out of the household.

¶ 34                                                  CONCLUSION

¶ 35        For the reasons above, we: (1) reverse the hearing officer's finding that Brenda failed to timely report Brelena's income since Brelena had already moved out of the household by the time she began receiving an income; (2) affirm the circuit court's order with respect to its finding relating to Brenda's failure to report Brelena's income; and (3) remand this matter to the hearing officer for further consideration of the appropriate remedy for Brenda's failure to timely report when her son and daughter moved out of the household.

¶ 36        Circuit court affirmed in part and reversed in part; hearing officer's decision reversed in part; cause remanded with directions.