2020 IL App (1st) 191738-U

No. 1-19-1738

Second Division
November 17, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DONNA M. BETTS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18 CH 438 |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES and OTHER PERSONS NAMED PURSUANT TO 735 ILCS 2/401 | ) ) ) ) | Honorable |
| | ) | Sanjay Tailor |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff's appeal is dismissed as moot because there is no live controversy for this court to decide.

¶ 2    Plaintiff-appellant, Donna M. Betts, appeals *pro se* from an order of the circuit court affirming the final administrative decision of defendant-appellee, the Illinois Department of Human Services (the Department). As best as we can determine, Betts primarily argues that the

circuit court erred by conspiring with the Department to ignore the fact that her allegations were judicially admitted where the Department did not specifically deny them in its answer and where the Attorney General did not personally appear to defend the Department. For the following reasons, we find these contentions to be meritless, and the appeal to be moot.

¶ 3                                    I. BACKGROUND

¶ 4     This appeal stems from Betts' participation in the Department's "Medical Spenddown Program," which allows individuals to qualify for government-funded healthcare benefits even though they otherwise have too much income or too many assets. Under this program, the individual pays the cost of their own medical care up to a certain amount each month, which is known as the "spenddown amount." After the spenddown amount is reached, the individual then receives a medical card to pay for other care needed for that month. Betts' spenddown obligation for the times relevant to this appeal was $232.00 per month. Also relevant to this appeal are three expenses for which Betts sought spenddown credit: (1) a $372.00 receipt dated June 29, 2016; (2) a $186.00 receipt dated June 29, 2016; and (3) a $441.91 bill dated April 28, 2016.

¶ 5     The Department rejected Betts' request to receive credit for those expenses and, in August 2016, Betts filed an administrative appeal regarding her spenddown status for June, July, and September of 2016. On September 12, 2016, Betts signed a document withdrawing her appeal on the condition that the Department comply with a verbal agreement to apply the $999.91 worth of expenses toward her spenddown. Per the agreement, the $999.91 would be used to satisfy Betts' spenddown obligation for September 2016 through December 2016, with the remaining $71.91 carrying over to January 2017.

¶ 6     Notwithstanding this agreement, on September 19, 2016, the Department sent Betts a letter stating that she did not meet her spenddown obligation for October 2016. Betts filed an appeal

with the Department's Bureau of Hearings, and a hearing was held before administrative law judge Manuel Flores on October 24, 2016.

¶ 7    At the hearing, Jataun Robinson, a caseworker for the Department, testified that when the Department's computer program determines that an individual has met their spenddown amount for a given month, the program does not automatically carry over any excess to the subsequent month. As such, Robinson had to separately calculate the amount of carryover spenddown credit to which Betts was entitled. Based on this calculation, Robinson determined that Betts had met her spenddown obligation for September 2016 through March 2017.

¶ 8    On November 17, 2016, the Department issued a final administrative decision in which it characterized the issue as whether Betts met her spenddown obligation for June and July of 2016. As the Department adopted Flores' findings that the spenddown amount was met for June, July, and September 2016, it dismissed the appeal as moot because there was nothing upon which to rule. The decision did not mention anything about Betts' spenddown obligation for months after September 2016.

¶ 9    On December 12, 2016, Betts filed a complaint in the circuit court seeking administrative review of the Department's decision. In February 2017, the Department filed a copy of the administrative record in the case, which constituted its answer to the complaint. Betts then filed numerous motions, including a motion for sanctions based on the Department's alleged failure to answer her complaint. The court denied the motion, stating that the Department had properly answered by filing the record of administrative proceedings in accordance with the Illinois Administrative Review Law (735 ILCS 5/3-108(b) (West 2016)).

¶ 10    After a hearing on Betts' complaint, Judge Diane Joan Larsen found that the Department's decision to dismiss the appeal as moot was clearly erroneous. Judge Larsen also stated that the

record showed that the $186.00 receipt was applied to Betts' October 2016 spenddown obligation, but that the record was unclear as to whether Betts received credit for the $372.00 receipt and $441.91 bill. Accordingly, the court remanded the matter to the Department "to make an explicit finding on Ms. Betts' spenddown status for September 2016 through January 2017, and to determine whether the $372.00 June 29, 2016 receipt and the $441.91 bill were and should have been applied."

¶ 11    On remand, another hearing was held before administrative law judge Kelly Pasholk. At the hearing, Department case manager Paris Collier-Davis stated that she was unsure what relief Betts was seeking because Department records showed that she had met her spenddown obligation from October 2016 through April 2017. Betts contended that, in violation of her verbal agreement with the Department, she did not receive credit for the $991.91 worth of expenses but instead satisfied her spenddown with "other bills." Collier-Davis responded that Betts must have received credit for the $991.91 because she would not have satisfied her spenddown without those expenses. Betts continued to insist that, although she had "no way of tracing exactly what [the Department was] doing," she nevertheless "kn[e]w for sure that Ms. Robinson did not comply with that contract." Pasholk asked Collier-Davis whether it was possible to determine exactly which expenses were used to satisfy Betts' spenddown obligation, and Collier-Davis stated that she would "look into that." Pasholk stated that she would leave the record open for Collier-Davis to supply that information.

¶ 12    On December 11, 2017, the Department issued a final decision based on Pasholk's recommendations. The decision stated that the record showed Betts' spenddown obligation for September 2016 was met with the entirety of the $186.00 receipt and part of the $441.91 bill. Betts' spenddown obligations through April 2017 were satisfied with other bills. Although the

decision acknowledged that Betts argued that "she is harmed by not having specific expenses applied to her spenddown," it concluded that "this action does not harm [Betts] because the spenddown has been met and any current expenses that have not been applied to [Betts'] spenddown may be applied to [her] spenddown in the future."

¶ 13    Notwithstanding the favorable administrative decision for Betts, she continued to file various motions before Judge Larsen, primarily seeking exorbitant sanctions such as "$175 [million] per minute per allegation and per prayer" and "$500 [million] per hour for each order entered unfavorably to [her]." On April 17, 2018, the court entered a final order denying Betts' motions and stating that there was now "no part of her case pending before this court."

¶ 14    In May 2018, Betts filed a timely notice of appeal in which she requested that this court "vacate each unfavorable order issued to [her], * * * strike all defenses * * *, and vacate the Aug. 23, 2017 Remand." We dismissed the appeal as moot, concluding that "there [was] no actual controversy for this court to decide" because the Department's decision on remand honored its verbal agreement with Betts and gave her credit to satisfy her spenddown obligations for the relevant months. *Betts v. Illinois Department of Human Services*, 2019 IL App (1st) 180977-U, ¶ 24.

¶ 15    On January 12, 2018, while Betts' original circuit court action was still pending before Judge Larsen, she filed a separate complaint for administrative review in the circuit court before Judge Sanjay Tailor. Betts' complaint alleged that "each of [her] facts and prayers [were] 100% judicially admitted" because (1) the Department answered her complaint before Judge Larsen by filing a copy of the administrative record rather than specifically admitting or denying her allegations and (2) the Attorney General did not personally file an appearance in her case. Betts also contended that the Pasholk decision on remand was "fraudulent and perjured" as part of a

"conspiracy with Judge Larsen" to deny that her allegations were judicially admitted. Betts further submitted that Pasholk "illegally stated that she would allow evidence to be open to the DHS" and that Pasholk and Collier-Davis "abused such illegal opportunity *** to tamper with [and] falsify the official record of the DHS." As relief, Betts requested, *inter alia*, that the court strike Judge Larsen's remand order, strike the Department's final decision on remand, and enter an order "finding that the specific terms of the September 12, 2016 verbal agreement are continuously not specifically performed." Betts also requested "carte blanche remedies, reliefs, compensations, damages, fees and costs" and that Judge Larsen, Flores, Pasholk, Collier-Davis, and Robinson be subject to "automatic forfeitures of offices, licenses, and employment." That same day, Betts also filed a motion for sanctions based on the same allegations as in her complaint.

¶ 16    In September 2018, the Department answered the complaint before Judge Tailor by filing a copy of the administrative record. Betts moved to strike the answer, which was denied. Upon Judge Tailor's request, the Department filed a supplemental answer consisting of the original administrative record that was before Judge Larsen.

¶ 17    On May 15, 2019, Betts filed a motion for sanctions against Judge Tailor. Specifically, Betts sought $100 million "an hour" based on Judge Tailor's denial of her motion to strike the Department's answer and $50 million "an hour" because Judge Tailor was "partially harass[ing]" her and "illegally delay[ing] entry of a favorable order" for her. Betts also argued that Judge Tailor "automatically disqualified and forfeited [his] offices, licenses and employment" by failing to rule on her motion to strike in an impartial manner.

¶ 18    On June 5, 2019, Judge Tailor issued a written order affirming the Department's final decision. In so ruling, Judge Tailor stated that Betts did not raise "any meritorious argument to challenge the second administrative decision," but rather advanced "several rambling and

incoherent arguments that, as DHS points out, have nothing to do with the December 17, 2017, administrative decision." Judge Tailor also denied Betts' motion for sanctions, stating that the motion was "frivolous and *** predicated on the same rambling allegations noted in her amended opening brief."

¶ 19 Betts subsequently filed another motion for sanctions as well as a motion to strike the June 5 order as "null, void, invalid, and ineffective." Judge Tailor denied both motions in a written order dated July 25, 2019. Betts filed a timely notice of appeal seeking "all unfavorable orders to [her] and all favorable orders to the Defendants stricken and reversed and, all remedies, reliefs, sanctions, penalties and fines granted."

¶ 20                                    II. ANALYSIS

¶ 21 In cases of administrative review, this court reviews the final decision of the agency, not the determination of the circuit court. *Williams v. Department of Human Services Division of Rehabilitation Services*, 2019 IL App (1st) 181517, ¶ 20. The applicable standard of review depends on whether the appeal presents a question of fact, a question of law, or a mixed question of law and fact. *Lipscomb v. Housing Authority of County of Cook*, 2015 IL App (1st) 142793, ¶ 14. The agency's factual findings are considered *prima facie* true and correct and will be disturbed only if they are against the manifest weight of the evidence. *Id.* If the appeal raises a purely legal question, this court gives no deference to the agency's determination and instead reviews the matter *de novo*. *Id.* Where, as here, the issue involves a determination of the legal effect of a given set of facts, the appeal presents a mixed question of law and fact, and the agency's decision will be reversed only if it was clearly erroneous. *Id.* ¶ 15. An agency's decision is clearly erroneous where it leaves the reviewing court with a definite and firm conviction that a mistake

has been committed. *Leach v. Department of Employment Security*, 2020 IL App (1st) 190299, ¶ 23.

¶ 22 Here, the Department contends that Betts has forfeited any challenge to the December 11, 2017 final decision. We agree, as Betts' brief contains no coherent argument as to why the decision was clearly erroneous. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Although we are mindful that Betts is proceeding *pro se*, we note that "parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78.

¶ 23 Rather than attack the Department's final decision, Betts' brief on appeal essentially repeats the conspiratorial allegations that she has leveled against Judge Larsen and Judge Tailor. For example, Betts contends that Judge Tailor engaged in a "smear campaign" against her and "abused the powers of offices, licenses, and employment" by "falsely characteriz[ing] [her] papers to be defective to fraudulently obstruct justice and remedies [her]." Betts also accuses Judge Tailor of:

> "aiding, abetting and assisting the Defendants in frauds and obstruction of justice and remedies to [her] by misrepresenting the law and [her] duties to be that [she] must strictly limit [her] Administrative Review Complaint to treating an admitted void order by ALJ Pasholk to be a valid order after it is admitted that jurisdiction is not conveyed back to DHS."

¶ 24 These allegations have nothing to do with the propriety of the Department's final decision. Additionally, we find nothing in the administrative record that suggests the Department clearly erred.

¶ 25    Forfeiture aside, we find that this appeal to be moot. An appeal becomes moot where the issues no longer exist or where intervening events render it impossible for the reviewing court to grant effectual relief to the complaining party. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *Id.* Rather, "[w]here the issue or issues before the court have become moot, the appeal will generally be dismissed." *Id.*

¶ 26    Here, after Judge Larsen's remand order, the Department issued a new final administrative decision explicitly stating that Betts has met her spenddown obligation through at least April 2017 and that she either received spenddown credit or could receive future credit for the three particular expenses in question. As this court has already found, the Department's new decision rendered the controversy moot because "[t]here is no relief that we can give [Betts] at this stage as her injuries have already been redressed." *Betts*, 2019 IL App (1st) 180977-U, ¶ 24.

¶ 27    As a final matter, we briefly note that the core contentions Betts has repeated throughout this controversy are meritless. As best as we can surmise from her somewhat incoherent filings, the premise underlying her allegations of misconduct is that the Department forfeited its ability to contest her allegations because (1) it did not specifically deny the allegations in its answer before Judge Larsen and (2) an assistant attorney general, rather than the Attorney General himself, appeared on behalf of the Department.

¶ 28    Although this court has held that a defendant's failure to explicitly deny a specific allegation in the complaint results in a judicial admission of that allegation (see, *e.g.*, *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 37), the Administrative Review Law plainly states that an administrative agency's answer "shall consist of the original or a certified copy of the entire record of proceedings under review." 735 ILCS 5/3-108(b) (West 2018). The

law also provides that "[n]o pleadings other than as herein enumerated shall be filed by any party unless required by the court." *Id.* Thus, the Department's answers in this case were in full compliance with the Administrative Review Law.

¶ 29    Betts also argues that Judge Tailor erred by "failing to disallow and strike *** all papers filed by Assistant Attorney Generals while there was no appointment by the Court as there was no claim nor proof that the Attorney General is unable to perform duties required by laws." This argument is apparently rooted in her interpretation of section 6 of the Attorney General Act, which provides that "[w]henever the attorney general is sick or absent, or unable to attend, or is interested in any cause or proceedings, *** the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding [.]" 15 ILCS 205/6 (West 2018). However, this section is merely an anti-conflict-of-interest provision that applies only where the Attorney General is an actual party to the action or is interested as a private individual. *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 400-01 (1977). Neither scenario applies here. "In addition, nothing in the [Attorney General] Act prohibits the Attorney General from appointing assistant Attorneys General to assist in the performance of the Attorney General's duties enumerated in section 4 of the Act." *People v. Scates*, 393 Ill. App. 3d 566, 570 (2009). Indeed, our supreme court recognized long ago that "[s]ince there are a hundred and two counties in this state, and courts are in session at the same time in many of them, the Attorney General cannot be present in person in all of them, and must necessarily be represented, at times, by his assistants." *People v. Looney*, 314 Ill. 150, 154-55 (1924). Accordingly, even if the appeal were not moot and even if our review were focused on the circuit court's decision, we would find Betts' forfeiture arguments to be meritless.

¶ 30                            III. CONCLUSION

¶ 31    For the reasons stated, we dismiss this appeal as moot.

¶ 32    Appeal dismissed.