2024 IL App (1st) 230786-U

SIXTH DIVISION
May 31, 2024

No. 1-23-0786

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KIMBERLY SAUNDERS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22 CH 5068 |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | Honorable |
| | ) | Alison C. Conlon, |
| Defendant-Appellee. | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Tailor concurred in the judgment.

## ORDER

¶ 1    *Held:*    We reverse the circuit court's order dismissing appellant's writ of *certiorari* and upholding the administrative agency's decision to terminate appellant's housing voucher where the administrative agency's evidence was insufficient to establish appellant concealed income, had a business, or committed fraud in violation of the federal housing program.

¶ 2   Appellant Kimberly Saunders[1] appeals from the circuit court's order denying her writ of *certiorari* and upholding the Chicago Housing Authority's (CHA) administrative decision to terminate her housing voucher under the Housing Choice Voucher Program (HCVP), claiming the record did not support the CHA's conclusion that she violated her HCVP family obligations. For the following reasons, we find that the evidence was insufficient to establish that Saunders had a business, business income, or committed fraud. Because the CHA hearing officer's termination decision was based on evidence that was insufficient to establish a violation of the federal housing program, we reverse both: (1) the circuit court's order dismissing appellant's writ and upholding the CHA's termination and (2) the hearing officer's termination decision.  Hence, we reinstate appellant's housing voucher.

¶ 3                              BACKGROUND

¶ 4   Appellant Saunders applied for and received a HCVP voucher in 2014. The HCVP assists low-income families through rent subsidies and is operated by the CHA through funding from the United States Department of Housing and Urban Development (HUD). The CHA is governed by the applicable provisions of the Code of Federal Regulations (CFR). 24 C.F.R. § 982.1 (2015). Saunders received the voucher up to and including November 2021.

¶ 5   On November 30, 2021, the CHA mailed Saunders two "document outstanding" notices, which explained the CHA had learned Saunders received two loans from the federal Paycheck Protection Program (PPP) (administered by the Small Business Administration (SBA)). Each notice corresponded to one of the loans, and the CHA stated that HCVP participant families "are required to report all income to the CHA, including business income, as it directly impacts their eligibility." The CHA instructed Saunders to provide "required documents" to the CHA, including

---

[1] Appellant's last name is listed as "Dale" throughout the record.

"business income information" and: (1) her Federal and State tax returns and tax transcripts form 2018-2020; (2) a tax form Schedule C or "Corporate Taxes Filed"; and (3) business income records, such as ledgers or payroll sheets. The CHA also requested, "All applications submitted to the SBA or authorized bank/lender(s) for the PPP Loan, including but not limited to" the borrower application form, the borrower application "for Schedule C Filers Using Gross Income," and "Any supporting documents provided to the SBA to verify eligibility." Both notices indicated Saunders needed to submit the documents within 10 days (by December 10, 2021), or she would be in violation of her family obligations and could face voucher termination.

¶ 6 On January 31, 2022, the CHA mailed Saunders an intent to terminate voucher letter (ITT). In the ITT, the CHA stated Saunders' received $42,000 between two loans, and failed to report that amount as income. The document continued that Saunders supplied tax transcripts from 2017-2020 in September 2021, but failed to provide other documents as requested in the notices. The ITT alleged Saunders violated three of her family obligations: (1) she did not supply true and complete information; (2) she did not provide information the CHA requested "for use in a regularly scheduled re-examination or interim re-examination of family income"; and (3) she committed fraud "in connection with" a federal housing program. The CHA proposed voucher termination, but informed Saunders she could request a hearing, which she did.

¶ 7 On April 7, 2022, a hearing was held regarding Saunders' voucher status before an independent hearing officer (hearing officer). Saunders, R.S. (a CHA "presenter"), N.W. (a CHA "witness"), and R.F. (a CHA "observer") were also present. N.W. testified that she is employed by Nan McKay and Associates, an organization that assists the CHA with the HCVP. N.W. identified exhibits, including a written log of Saunders' communications with the CHA, and voucher-related documents signed by Saunders on May 16, 2019, wherein she acknowledged her

obligations to abide by the CHA's requirements, and any violation could lead to termination. N.W. identified another exhibit, an Application for Continued Eligibility (ACE) for voucher dated March 30, 2018, in which Saunders listed her only income as "annual supplemental security benefits for two of her children in the amount of $9000.00 per child," and "did not list any income from self-employment or wages from employment." On redirect examination, N.W. stated that the ACE "requires a participant to report all household income." N.W. also identified "public records from the [PPP] with respect to" Saunders, which showed she received two loans totaling $42,000 for "a new business or one 2 years or less which provided Personal Services."

¶ 8 On cross-examination, N.W. testified that on December 23, 2021, Saunders emailed N.W. and reported she did not have any PPP loan documents "because she did not fill out the application and was scammed." N.W. instructed Saunders to report this to the SBA, then provide the CHA with any documentation the SBA sent her confirming the scam. N.W. further testified that the log of Saunders' interactions with the CHA contained an entry for January 19, 2022, in which Saunders told a CHA employee that she (1) received the ITT; (2) received the PPP loan money, but "thought it was a loan that did not need to be reported"; and (3) split the PPP loan money with the individual that prepared the applications. N.W. stated, "any and all income must be reported to the CHA."

¶ 9 Saunders testified that, regarding the PPP loan, she did not understand what was applied for, and someone told her "it was a grant that she would not need to repay." Saunders further testified that an unnamed individual filled out the PPP loan applications. The money was "deposited in her bank account," after which she "would then withdraw half the proceeds in cash [and give it] to the people who prepared the loan application." She indicated that at some point before the hearing, she informed the CHA she "did not know what was submitted for the loans" and asked for a payment plan. She did not understand she could contact the SBA and had "no

access to the SBA or the bank that provided the loans" because "she did not know the email used for the loan applications."

¶ 10    On cross-examination, Saunders testified someone on Facebook solicited her to apply for the PPP loans. She did not use the money for payroll and did not know she needed to report the proceeds.

¶ 11    In his "Credibility Determinations," the hearing officer stated that he found N.W. credible and Saunders incredible. He explained Saunders claimed someone scammed her, but never contacted the SBA. He characterized her claim that she was an "unwilling victim" as "unbelievable" because "she voluntarily participated" in the scam and "paid an unnamed person half of the loan proceeds in cash." She also never asked the CHA if she needed to report the PPP loan proceeds.

¶ 12    In his "Analysis and Mitigating/Aggravating Factors" section, the hearing officer wrote the situation was a "discretionary termination." He found that Saunders, by virtue of signing voucher renewal documents, knew both of her reporting obligations and that she could not commit fraud in connection with a housing program, but despite this knowledge, she failed to submit documents pursuant to the notices. He stated, "A participant does not have the right to decide when or if they will comply with requests for documents." Moreover, after Saunders contacted the CHA on December 23, 2021, claiming she could not supply documents related to the PPP loan applications because someone "scammed" her, she then failed to contact the SBA as instructed. The hearing officer concluded that Saunders, "was not a victim but an active participant in any scam," and that the "fact she could not access documents submitted to the SBA as part of a scam is not a defense." He further found that she violated the fraud provision of the family obligations, based on her "active participation in a scheme to obtain $42,000 in PPP loans," explaining the "nexus to the

HCVP" was "evident" because she "received $42,000 from the SBA for a business neither of which she reported to CHA in violation of her Family Obligations," and the $42,000 "was income that was not reported to the CHA. This intentional nonreporting prevented the CHA from calculating the proper amount of assistance it would provide [Saunders]."

¶ 13 In aggravation, the hearing officer listed that Saunders ignored the document notices, did not contact the SBA, actively participated in a "scam," and failed to report her business/self-employment or her receipt of $42,000 to the CHA. In mitigation, the hearing officer noted Saunders' lack of any earlier HCVP violations, and that two members of her household had a "disability."

¶ 14 The hearing officer found that Saunders (1) provided both false and incomplete information to the CHA, (2) did not comply with her requirement to provide all information the CHA requested for income re-examination, (3) did not report her business or her receipt of $42,000, and (4) committed fraud in connection with the HCVP. Based on these findings, and after considering the aggravating and mitigating factors, he recommended upholding the CHA's termination.

¶ 15 The hearing exhibits were included in the record on appeal. In Saunders' CHA voucher application, dated March 30, 2018, she indicated her income consisted of Supplemental Security Income payments for Parnelius and Kimora Saunders at $9000 annually, as well as food stamps. The form states, "If you fail to report all household income, you may lose your voucher."

¶ 16 In the PPP loan application approved on August 3, 2020, the "business" is listed as "New Business of 2 years or less," the business type is listed as "Sole Proprietorship" with a description reading "All Other Personal Services," and the spaces for "Race/Ethnicity" and "Gender" are left blank. In the PPP loan application approved on March 12, 2021, the business is described as "Child

Day Care Services," and information regarding Saunders' race, ethnicity, and gender is again omitted.

¶ 17   In the communications log, a CHA employee made an entry dated January 19, 2022, indicating that the employee spoke with Saunders that day, who "confirmed receipt of the ITT and stated she didn't know what to do since she did get the PPP loan money, but she understood it was just a loan and didn't need to be reported." Saunders reported that she split the money with the person who completed the application. The CHA employee continued, "I let [Saunders] know that by requesting a hearing, she would have an opportunity to share her story."

¶ 18   On April 14, 2022, the CHA officially terminated the voucher, and on May 26, 2022, Saunders filed a writ of *certiorari* seeking review of the CHA's administrative decision. She contended she made "unintentional mistakes," and thus should have been given time to repay, and noted the mitigating factors that she was a domestic violence survivor and had disabled minor children.

¶ 19   In her memorandum of law in support of her writ of *certiorari*, Saunders contended that she had no business, thus no employees or payroll, and she testified as such at the hearing. The CHA entered no contradictory evidence showing she had a business. On the failure to report violation, Saunders argued the evidence showed she did not know she had to report the $42,000, and thus her failure to report the money could not be grounds for voucher termination because it was unintentional. She further argued she had no obligation to report her receipt of the $42,000 because the money was a loan, and a loan is not income. Finally, regarding fraud, Saunders stated that even if the person completing the PPP application committed fraud, it was unrelated to her housing.

¶ 20   In CHA's response to Saunders' memorandum, it argued "Plaintiff equates her PPP application to her belief that it was a grant but did not explain why she failed to contact SBA or take any further action once she learned that it was, in fact, a business loan." It continued "Thus, either Plaintiff represented to SBA that she had a business when she did not have a business, or she had a business, received PPP proceeds for that business, and concealed that business from CHA."

¶ 21   On April 3, 2023, the circuit court denied Saunders' writ of *certiorari*. This appeal followed.

¶ 22                                    JURISDICTION

¶ 23   The circuit court denied Saunders' timely writ of *certiorari* on April 3, 2023, and Saunders filed her notice of appeal on May 2, 2023. This court therefore has jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 24                                    ANALYSIS

¶ 25   On appeal, Saunders claims that the CHA terminated her voucher erroneously because the record did not support the hearing officer's bases for termination.

¶ 26   This matter arises from the decision of an administrative agency, the CHA. "The CHA operates under the Illinois Housing Authorities Act (310 ILCS 10/1 *et seq.* (West 2020)). The Illinois Housing Authorities Act did not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)); therefore, the appropriate vehicle for review is a common law writ of *certiorari*." *Landers v. Chicago Housing Authority*, 404 Ill. App. 3d 568, 571 (2010). At a termination of voucher hearing, the hearing officer makes factual determinations based on a preponderance of the evidence standard. 24 C.F.R. § 982.555(e)(6) (2015).

¶ 27   The appeal of a circuit court's ruling on a petition for certiorari seeking review of an administrative agency's decision is treated the same way as any other appeal for administrative

8

review. *Stewart v. Boone County Housing Authority*, 2018 IL App (2d) 180052, ¶ 22. We review the decision of the administrative agency, rather than the decision of the circuit court. *Id.* The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001); See also *Lipscomb v. Housing Authority of County of Cook*, 2015 IL App (1st) 142793, ¶ 14.

¶ 28  An administrative agency's factual findings are considered *prima facie* true and correct. *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 56. The findings are disturbed only if they are against the manifest weight of the evidence. *Stewart*, 2018 IL App (2d) 180052, ¶ 22. A factual finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Beggs v. Board of Education. of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50.

¶ 29  If a purely legal question is at issue, the standard of review is *de novo;* this standard is "independent and not deferential." [Internal quotation marks omitted.] *Goodman v. Ward*, 241 Ill. 2d 398 406 (2011). Where a decision involves a mixed question of law and fact, we will not reverse unless the decision is clearly erroneous. *Lipscomb*, 2015 IL App (1st) 142793, ¶ 15. A mixed question of law and fact arises where the facts and applicable law are undisputed, and the issue on review is whether the facts establish that the applicable law was violated. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). A reviewing court will not reverse a decision as clearly erroneous unless it has a firm conviction that a mistake has been made. *Id.*

¶ 30    The CHA's administration of the HCVP is governed by HUD regulations. 24 C.F.R. § 982.52 (1998). Relevant here, HUD regulations require, as part of a voucher recipient's family obligations, that the recipient produce any information a housing agency deems necessary in the administration of the program, including "any information requested" by the agency "for use in a regularly scheduled re-examination or interim re-examination of family income." 24 C.F.R. § 982.551(b)(1), (2) (2016). The information provided must be "true and complete." *Id.* at § 982.551(b)(4). Additionally, "members of the family must not commit fraud, bribery or any other corrupt or criminal act in connection with the program." *Id.* at § 982.551(k). The CHA "may" terminate a voucher "[i]f the family violates any family obligations under the program," and if any family member commits "fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program." 24 C.F.R. § 982.552(c)(1)(i), (iv) (2016).

¶ 31    Fraud "means a single act or pattern of action *** [t]hat constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead." 24 C.F.R. § 792.103 (1999). The CHA's administrative plan (the Plan) differentiates between intentional and unintentional errors, stating in relevant part "[t]he term error refers to an unintentional mistake or omission," as opposed to fraud (or abuse) per 24 C.F.R. § 792.103 (1999). CHA admin. plan ch. 14-1.A (2018).[2] The Plan continues that recipients who commit "errors" are generally subject to repayment plans, but instances of fraud or abuse may lead to termination (though less severe options also remain available when abuse is at issue). *Id.* at 14-II.A, 14-II.B.[3] In *Lipscomb*, the

_____

[2]    The plan is available at https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2019-05/Admin%20Plan-Final.pdf. As the CHA notes in the briefing, though the Plan was not an official part of the record below, this is the type of public document of which we may take judicial notice. See *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 27.

[3]    In considering a voucher termination issue, the Court of Appeals of Ohio in *McClarty v. Greene Metropolitan Housing Authority*, 196 Ohio App. 3d 256, 261 (2011), referenced the Housing Choice Voucher Program Guidebook, which, at the time of *McClarty*, contained express provisions requiring a finding of intent for fraud, as well as provisions expressing the preference to only terminate a voucher due

court discussed the need for an intent showing when a family fails to report new income before termination is appropriate, referencing the Housing Authority of County of Cook 2012 HCV Administration plan (which, like the Plan, noted the distinction between unintentional reporting error and abuse or fraud). *Lipscomb*, 2015 IL App (1st) 142793, ¶ 30. The *Lipscomb* court partially based its decision to reverse termination and remand for further findings in part on the failure of the hearing officer to sufficiently consider the recipient's intent. *Id.* ¶ 31.

¶ 32   Here, the hearing officer found that Saunders (1) provided untrue and incomplete information; (2) failed to supply information the CHA deemed necessary for an income re-examination; (3) failed to report her business or her receipt of $42,000 to the CHA; and (4) committed fraud.

¶ 33   We find the CHA's voucher termination was not supported by the evidence. First, the CHA did not establish that Saunders provided untrue and incomplete information by a preponderance of the evidence. She testified that she provided her tax returns and had no other documents. Additionally, because another person filed the PPP loan applications, she had no access to the requested documents regarding the applications. Saunders did not refuse to communicate with the CHA regarding the loans. Conversely, the CHA offered no evidence to support the conclusion she possessed documents or information she withheld. The record before the hearing officer was, therefore, that somebody else authored and filed the PPP loan applications at issue, and Saunders had neither possession of, nor access to, any documents submitted in connection with those applications. Accordingly, the hearing officer's factual finding that Saunders provided untrue and incomplete information was not supported by the evidence. See *Miles v. Housing Authority of*

---

to fraud or abuse, while allowing repayment in cases of error. According to HUD's website, the current relevant Guidebook sections were being updated and not yet available at the time of this order.

*Cook County*, 2015 IL App (1st) 141292, ¶ 47 (termination decision must be supported by preponderance of the evidence).

¶ 34    Second, the CHA failed to offer sufficient evidence to establish that Saunders had a business. Indeed, the CHA entered no evidence she had a business. Not the name of the business, not one customer, no indication of employees or payroll. The only evidence in the record regarding whether a business existed was the PPP loan applications, which Saunders testified, unrebutted and unchallenged by the CHA, that she did not fill out. This testimony is corroborated by the lack of her personal information on the applications. The record lacks any evidence a business existed, let alone sufficient evidence to establish that fact by a preponderance of the evidence. *Id.*

¶ 35    Third, the CHA offered no evidence establishing a violation for failure to report income because there was no evidence she knew the $42,000 should have been reported, then chose not to do so. See *Lipscomb*, 2015 IL App (1st) 142793, ¶¶ 29-31. Instead, the record shows Saunders was (1) surprised by the notices from the CHA because she did not know she needed to report the $42,000 in loans as income (2) concerned over her voucher status because she did not understand that receipt of the PPP loans could impact her housing, and (3) confused because she did not understand the steps needed to remedy the situation. She also requested a payment plan to make up for any discrepancy. Under these circumstances, the evidence was insufficient to show that Saunders acted intentionally; instead, as described in *Lipscomb*, Saunders at worst committed an error, not abuse, making termination for failure to report inappropriate. See The Plan at 14-1.A; *Lipscomb*, 2015 IL App (1st) 142793, ¶ 30.

¶ 36    We note this violation also fails as a matter of law because the $42,000 was a loan, and loans are not income, but debts that must be repaid. See *Thibadeau v. Thibadeau*, 441 N.W.2d 281, 285 (Wis. Ct. App. 1989); see also *United States v. Beavers*, 756 F.3d 1044, 1057 (7th Cir. 2014)

(rejecting defendant's challenges to the jury instructions in tax fraud case about the definition of a loan because a "correct statement of the law" is that "loan proceeds are not income because the taxpayer has incurred a genuine obligation to repay the loan"); *In re Marriage of Tegeler*, 365 Ill. App. 3d 448, 457-58 (2006) (finding that annual loans received by a father from the bank should not be considered income for child support purposes, reasoning that generally loans should not be considered income" because they "usually do not directly increase an individual's wealth" and require repayment). The SBA maintains that PPP loan "[b]orrowers can apply for forgiveness any time up to five years from the date that SBA issued the SBA loan number. If borrowers do not apply for forgiveness within 10 months after the last day of the covered period, then PPP loan payments are no longer deferred, and borrowers will begin making loan payments to their PPP lender." See SBA U.S. Small Business Administration (PPP Loan Forgiveness), https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-loan-forgiveness. It follows that because the funds at issue were not income as a matter of law, the CHA erred in finding the failure to report that income could constitute grounds for termination.

¶ 37    On this point, the CHA argues that, even conceding the $42,000 was initially not income because it was a loan, Saunders became obligated to report the funds because the $42,000 debt was forgiven (per the SBA's website). This argument fails because the record contains no information about loan forgiveness, or Saunders' or the CHA's awareness thereof. Accordingly, there is no support in the record for the proposition that Saunders knew the loans were forgiven. Saunders had no obligation to report the loans, and no violation was established here. See The Plan at 14-1.A; *Lipscomb*, 2015 IL App (1st) 142793, ¶ 30.

¶ 38   Fourth, and finally, regarding the fraud violation, the hearing officer based this violation on the factual finding that Saunders had a business she failed to report to the CHA. As explained above, the CHA failed to introduce any evidence that Saunders had a business, and thus there is also no factual basis to support the finding that she committed fraud by failing to report that business to the CHA. Moreover, to the extent the CHA contends the fraud violation was predicated on her failure to disclose the $42,000 in loans, this theory also fails because it requires a showing that Saunders acted intentionally, which the record does not support. See *Exline v. Weldon*, 57 Ill. 2d 105, 110 (1974) (fraud requires a showing that an act was done with the intent to deceive). The hearing officer's finding of fraud was thus not supported by the evidence.

¶ 39   Because the hearing officer's relevant findings of fact were not supported by the evidence, there is no valid basis to uphold the CHA's termination of Saunders' voucher. Accordingly, we reverse the CHA's termination, and the judgment of the circuit court upholding that decision and dismissing the request for a writ of *certiorari*. We order the CHA to reinstate Saunders housing voucher *instanter*.[4]

¶ 40                                        CONCLUSION

¶ 41   Each finding of fact that the hearing officer used to find Saunders violated her family obligations was against the manifest weight of the evidence. Consequently, we reverse the CHA's decision, along with that of the circuit court, and reinstate Saunders' voucher *instanter*.

¶ 42   Circuit court reversed; hearing officer's decision reversed; and cause remanded with directions to reinstate Saunder's voucher.

---

[4] Because we reverse based on insufficient evidence to support the hearing officer's ruling, we do not reach the issues of whether the hearing officer sufficiently considered mitigating circumstances.